# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN RE P3 HEALTH GROUP HOLDINGS, LLC | ) ) | Consol. C.A. No. 2021-0518-JTL |

## ORDER DENYING GREG KAZARIAN'S MOTION TO DISMISS COUNT VII

1. Hudson Vegas Investment SPV, LLC ("Hudson") was a minority investor in P3 Health Group Holdings, LLC (the "Company"). In this litigation, Hudson has asserted various claims based on a transaction between the Company and a special purpose acquisition company, commonly known as a SPAC.

2. The defendants filed a surfeit of motions to dismiss on various grounds, including Rule 12(b)(6). The court has issued a decision addressing the breach of contract claims that Hudson asserted. Dkt. 172 (the "Contract Opinion," cited as "Op."). This order incorporates that decision by reference.

3. In Count VII of its complaint, Hudson has asserted a claim for breach of fiduciary duty against Kazarian in his capacity as an officer of the Company. In Count VII, Hudson alleges that Kazarian breached his fiduciary duties by accepting a secret, personal, financial incentive from Foresight.

4. The LLC Agreement expressly preserves the fiduciary duties of the Company's officers. Ex. 1 § 5.6(d). The operative language states: "The Officers, in the performance of their duties as such, shall owe to the Company and the Members duties of the type owed by the officers of a corporation to such corporation and its stockholders under the laws of the State of Delaware." *Id.*

5. As described in the Contract Opinion, Chicago Pacific and the Company pursued a de-SPAC merger with Foresight, but that transaction became far less attractive to the Company in April 2021. Op. at 11–12.

a. An important aspect of the de-SPAC merger was the Company's ability to raise additional financing through the PIPE. Chicago Pacific principals handled nearly every aspect of the PIPE. The letter of intent contemplated a PIPE of $400 to $500 million. *Id.* at 11.

b. In April 2021, the SPAC market began to weaken, and JPMorgan warned Chicago Pacific that the PIPE would top out at $300 to $350 million, nearly one-third less than the letter of intent contemplated. *Id.*

c. As April 2021 unfolded, the SPAC market declined further. By April 29, JPMorgan was telling Tolan that the maximum proceeds had fallen to $250 million. No one provided the information to the Board. Tolan decided to continue moving forward with the de-SPAC merger. *Id.* at 11–12.

d. To shore up Chicago Pacific's commitment to the transaction, Wasson gave Tolan and Kazarian the opportunity to invest personally in a follow-on SPAC called Foresight Acquisition Corp. II ("Foresight II"). Tolan described the invitation as "an honor." *Id.* at 12. Without making any disclosure to the Board, Tolan and Kazarian accepted, and on May 7, 2021, they invested $500,000 and $100,000 in Foresight II. Based on historical rates of return to SPAC insiders, Tolan and Kazarian stood to reap nearly $9 million and $5 million, respectively, if Foresight II completed an acquisition. *Id.*

6. It is reasonably conceivable that Kazarian acted in bad faith and breached his duty of loyalty as an officer by accepting the opportunity to invest in Foresight II.

a. The Delaware Supreme Court has held that a corporate officer owes the same fiduciary duties as a corporate director. *See Gantler v. Stephens*, 965 A.2d 695, 708–09 (Del. 2009). Directors of a Delaware corporation owe two fiduciary duties— loyalty and care. *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006). At a minimum, officers owe those same duties. *Gantler*, 965 A.2d at 708– 09.

b. The duty of loyalty includes a requirement to act in good faith, which is "a subsidiary element, i.e., a condition, of the fundamental duty of loyalty." *Stone*, 911 A.2d at 370 (cleaned up). "A failure to act in good faith may be shown, for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation." *In re Walt Disney Co. Deriv. Litig. (Disney II)*, 906 A.2d 27, 67 (Del. 2006) (cleaned up).

c. Like directors, officers must "place the interests of the corporation and shareholders that they serve before their own." *TVI Corp. v. Gallagher*, 2013 WL 5809271, at *25 (Del. Ch. Oct. 28, 2013). And like directors, officers have a duty to act "loyally by trying to do their job for proper corporate purposes in good faith," rather than disloyally by putting other interests, such as the self-interest of a superior, ahead of the corporation's best interest. *Hampshire Gp., Ltd. v. Kuttner*, 2010 WL 2739995, at *12 (Del. Ch. July 12, 2010).

d.     By accepting the opportunity to invest in Foresight II, Kazarian engaged in self-interested conduct. Because he acted unilaterally, Kazarian bears the burden of proving that his actions were entirely fair. It is reasonably conceivable that it was not entirely fair to the Company for Kazarian to accept a personal benefit from the Company's counterparty in the midst of a deal process.

7.     It is reasonably conceivable that Kazarian acted in bad faith and breached his duty of loyalty as an officer by failing to disclose the Foresight II investment to the Board.

a.     An officer's duty of loyalty has additional dimensions beyond a director's duty of loyalty because officers act as agents for the entity. *See Lebanon Cnty. Empls.' Ret. Fund v. AmerisourceBergen Corp.*, 2020 WL 132752, at *21 (Del. Ch. Jan. 13, 2020) ("Officers also are fiduciaries in their capacities as agents who report to the board of directors."), *aff'd*, 243 A.3d 417 (Del. 2020). "Under a particularly well-developed body of fiduciary law, agents owe additional and more concrete duties to their principal." *Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 843–44 (Del. Ch. 2022).

b.     "An agent owes the principal a duty to provide information to the principal that the agent knows or has reason to know the principal would wish to have." Restatement (Third) of Agency § 8.11 cmt. b (Am. Law Inst. 2006), Westlaw, (database updated Oct. 2022). "That duty exists because a principal's decisions may also be affected by information about an agent and the agent's conduct once the agent has been retained by the principal." *Metro Storage*, 275 A.3d at 851 (cleaned up). Officers, as agents, "owe a duty to disclose relevant information if they have notice of facts which

- 4 -

they should know may affect the decisions of their principals as to their conduct." *Triton Constr. Co., Inc. v. E. Shore Elec. Servs., Inc.*, 2009 WL 1387115, at \*14 (Del. Ch. May 18, 2009), *aff'd*, 2010 WL 376924 (Del. Jan. 14, 2010) (ORDER). An officer of a Delaware entity has "the responsibility to disclose to their superior officer or principal material information relevant to the affairs of the agency entrusted to them." *Hampshire Gp.*, 2010 WL 2739995, at \*13 (internal quotations omitted).

c.       In his role as an officer of the Company, Kazarian was an agent of the Board. In that capacity, Kazarian had a duty to provide the Board with the information it needed during the year-long process leading to the de-SPAC merger. As detailed in the Contract Opinion, Kazarian played a key role in the negotiations with Foresight. *See* Op. at 5, 9. Kazarian voiced support for the letter of intent with Foresight. *Id.* at 9. When Hudson raised concerns about the Board's narrow focus on Foresight, it was Kazarian who addressed their objections. *Id.* at 5. When Hudson expressed a desire to exercise the Preemptive Option, it was Kazarian who orchestrated the Company's response. *Id.* at 9. Kazarian advocated strongly for Foresight to be the SPAC to help the Company access the public markets.

d.       It is reasonably conceivable that Kazarian had a duty to provide the Board with information about an interest that gave him an incentive to favor Foresight. It is reasonably conceivable that Kazarian's receipt of a side benefit in the form of the opportunity to invest in Foresight II was information that Kazarian had an obligation to disclose to the Board.

e. In their capacity as members of the Board, the Hudson Managers were entitled to know about Kazarian's side deal. As explained in the Contract Opinion, Kazarian actively worked to limit the information the Hudson Managers received. *Id.* at 11.

f. Kazarian did not disclose to the Board or to the Hudson Managers that he had received a side benefit from Foresight.

g. Hudson's claim for breach of fiduciary duty against Kazarian in his capacity as an officer states a claim on which relief can be granted.

8. To negate Hudson's claim, Kazarian argues that he had transitioned out of his role as Chief Strategic Officer by the time he accepted the opportunity to invest in Foresight II. That is a fact issue that cannot be decided on a motion to dismiss.

9. Kazarian also responds that he could accept the Foresight II investment opportunity because the LLC Agreement authorized the significant members and their affiliates to pursue other business interests, even if those interests competed with the Company. The relevant language states:

> The Members expressly acknowledge and agree that . . . (i) each of the [Chicago Pacific] Members, Leavitt, the Class D Members, and each of their respective Affiliates are permitted to have, and may presently or in the future have, investments or other business relationships with entities engaged in the Business other than through the Company or any of its Subsidiaries (an "Other Business"), . . . (iii) none of the [Chicago Pacific] Members, Leavitt, the Class D Members, nor any of their respective Affiliates will be prohibited by virtue of their respective investments in the Company or its Subsidiaries or their service as Managers or service on the Company's or its Subsidiaries' board of managers or directors from pursuing and engaging in any such activities, (iv) none of the [Chicago Pacific] Members, Leavitt, the Class D Members, nor any of their respective Affiliates will be obligated to inform or present the Company or

its Subsidiaries or the Board of any such opportunity, relationship or investment, . . . and (vi) the involvement of any of the [Chicago Pacific] Members, Leavitt, the Class D Members, and/or any of their respective Affiliates in any Other Business will not constitute a conflict of interest by such Persons with respect to the Company or its Members or any of the Company's Subsidiaries.

Ex. 1 § 6.6(a). This is a standard provision designed to eliminate the entity opportunity doctrine that otherwise would apply by default and could limit the ability of fund investors to own businesses or pursue business opportunities that could compete with the company. *See* Martin I. Lubaroff, Paul M. Altman, Srinivas M. Raju, & Joshua J. Novak, *Delaware Limited Partnerships* § 14.05 at 14-114 (Supp. 2022) (discussing an analogous provision in a limited partnership agreement allowing a partner the "ability to pursue business opportunities for itself or otherwise compete with the business of the partnership"). It does not say anything about an officer accepting a personal benefit from the counterparty in an ongoing negotiation.

10. Kazarian also relies on an exculpation provision in the LLC Agreement that eliminates liability for managers across a wide class of claims. The pertinent provision provides:

> Except for any liability arising out of or resulting from a Manager's act of fraud as determined by a final judgment, order or decree of an arbitrator or a court of competent jurisdiction . . ., the personal liability of a Manager to any other Manager, the Company, or to any Member for any loss suffered by the Company or any monetary damages for breach of contract or breach of any duty (including any fiduciary duties, any and all such fiduciary duties having been eliminated pursuant to Section 5.6(b)) is hereby eliminated to the fullest extent permitted by the Delaware Act and any other applicable law. In furtherance of the foregoing and not in limitation thereof, each Manager shall not be liable for errors in judgment and may consult with and rely on counsel and accountants and any Member, Manager, Officer, employee or committee of the Company or any of its subsidiaries

- 7 -

> or other professional in respect of the affairs of the Company and shall in no event have any personal liability in respect thereof.

Ex. 1 § 5.7. Kazarian argues that he is entitled to receive exculpation in his capacity as a manger unless Hudson can specifically plead facts showing that he took action solely in his capacity as an officer.

  a. At the pleading stage, Hudson need only plead facts indicating that it is reasonably conceivable that Kazarian acted in an officer capacity. *See In re MultiPlan Corp. S'holders Litig.*, 268 A.3d 784, 819 (Del. Ch. 2022) (denying motion to dismiss where the complaint was "replete with allegations regarding [an officer]" even though "the capacity in which he was acting" was not clearly specified); *Malca v. Rappi, Inc.*, 2021 WL 2044268, at *6 (Del. Ch. May 20, 2021) (ORDER) ("If a plaintiff reasonably alleges facts that suggest such an agency relationship is present and the alleged fiduciary acted contrary to that core principle, the plaintiff has successfully stated a claim upon which relief may be granted.").

  b. The complaint meets that burden. The vast majority of Kazarian's actions took place outside of board meetings. It is reasonably conceivable that Kazarian was acting as an officer when he was not attending board meetings or otherwise responding to requests for board action.

11. Count VII states a claim on which relief can be granted. The motion to dismiss Count VII is denied.

*/s/ J. Travis Laster*
Vice Chancellor Laster
November 3, 2022
